IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PRODUCE ALLIANCE, L.L.C., | ) |
| Plaintiff, | ) Case No. CIV04-278-S-EJL |
| vs. | ) **ORDER** |
| GREEN APPLE PRODUCE, INC.; JUAN TORRES; AARON R. DITTMAN; ERIC DITTMAN; LYNN DILL; and COLIN R. CANNON, | ) |
| Defendants. | ) |

Pending before the Court in the above-entitled matter are cross motions for summary judgment (Docket Nos. 49, 57, 81, 93 and 96). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**Factual Background**

Between March 1, 2004 and May 17, 2004, Plaintiff Produce Alliance LLC ("Produce Alliance") sold wholesale quantities of perishable agricultural commodities (produce) worth $224,615.00 plus costs to Green Apple Produce, Inc. ("Green Apple"). The balance which remains unpaid is $108,777.63 plus costs. Produce Alliance filed a complaint in federal court pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c) against Green Apple and the individual shareholders of Green Apple: Juan Torres ("Torres"), Lynn Dill ("Dill"), Eric Dittman ("Dittman"), Aaron Dittman, and Colin Cannon ("Cannon"). Dittman was an officer and director of Green Apple and was in charge of day to day activities until his resignation from the corporation on or about March 12, 2004. After March 12, 2004, Torres and Dill ran the day to day

operations of Green Apple. Cannon was the President as well as the Chairman of the Board of Directors and a 25% shareholder of Green Apple. Torres, Dill and Dittman were also officers, directors and 25% shareholders of the corporation. All four were listed on Green Apple's PACA dealer license.

After the complaint was filed, Dittman answered and filed a cross claim against Green Apple, Torres and Dill claiming Dittman had no legal obligations after March 12, 2004. Dill and Torres filed answers to Dittman's cross claim and filed cross claims against Dittman and Cannon. Green Apple has not filed an answer in action and is no longer in business. Aaron Dittman has not filed an answer or otherwise appeared in this litigation.

## Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

**Cannon's Motion for Summary Judgment and Produce Alliance's Cross Motion for Summary Judgment**

Cannon argues summary judgment should be granted in his favor as he was not a "responsibly connected" person to Green Apple.  Produce Alliance responds that the proper test is not the "responsibly connected" test, but whether Cannon was in a position to control PACA trust

---

> adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

assets and that under the test summary judgment should be entered in Plaintiff's favor as Cannon was in a position to control the PACA trust assets and failed to do so. In reply, Cannon argues under either test he should not be held personally liable and summary judgment should be granted.

The Court finds Cannon's reliance on the "responsibly connected" test is misplaced. The statute defines the term "responsibly connected" means:

> affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association. A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of this Act [7 U.S.C. § § 499a et seq.] and that the person either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license which was the alter ego of its owners.

7 U.S.C. § 499a(b)(9).

However, this term is not used in the sections of the statute at issue in this case. Plaintiff is seeking to establish liability for all defendants under § 499b (unfair conduct) and § 499e (liability to persons injured). The only section that uses the term "responsibly connected" is § 499h (grounds for suspension or revocation of license). The Ninth Circuit applied the "responsibly connected" definition in Maldonado v. Dept. of Agric., 154 F.3d 1086 (9th Cir. 1998) when Ernest Maldonado was challenging an administrative order prohibiting him from working in the produce industry for a period of time without posting a bond. In Maldonado, the challenge was under § 499h. In the present case, the issue does not involve Cannon attempting to work in the produce industry without having to post a bond and the "responsibly connected" test is not relevant. The correct Ninth Circuit standard to apply to determine if Cannon is personally liable is the "position to control" standard set forth in Sunkist Growers, Inc. v. Fisher, 104 F. 3d 280 (9th Cir. 1997). In Sunkist, the Court succinctly summarized the purpose of PACA and the ability to hold individuals liable under a trust theory:

> Enacted in 1930, PACA had the intent of "preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry." Farley and Calfee, Inc. v. United States Dep't of Agric., 941 F.2d 964, 966 (9th Cir.1991). PACA requires all brokers and dealers in perishable agricultural commodities to obtain licenses from the Secretary of Agriculture. Id..; 7 U.S.C. §§ 499c, 499d. Dealers violate PACA if they do not

pay promptly and in full for any perishable commodity in interstate commerce. 7 U.S.C. § 499b(4).

> Such liability may be enforced either (1) by complaint to the Secretary ... or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies.

Id. at § 499e(b).

Congress amended the statute in 1984 to add an additional remedy: the perishable commodities or proceeds from the sale of those commodities are held in trust by the dealer for the benefit of the unpaid seller until full payment is made. Id. at § 499e(c)(2). Ordinary principles of trust law apply to trusts created under PACA, so that for instance the trust assets are excluded from the estate should the dealer go bankrupt. See In re Kornblum & Co., 81 F.3d 280, 284 (2d Cir.1996).

> Although the use of a trust under the Act was aimed at remedying problems created by buyers' bankruptcies, the trust was also envisioned as a method of enforcing debts against solvent buyers. In fact, by operation of § 499e(c)(2), a statutory trust in a defined res is created whenever a seller or supplier of perishable agricultural products provides such products to a commission merchant, dealer, or broker on credit. If the seller gives timely notice of its intent to preserve its benefits under the trust, the buyer must conduct itself as trustee of its assets until the seller is paid in full.

JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 77-78 (2d Cir.1990) (citations omitted).

Sunkist, at 282.

Therefore, in order to establish the existence of a PACA trust, Produce Alliance must establish: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in the interstate commerce; (4) the seller has not yet received full payment for the transaction(s); and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law. 7 U.S.C. § 499e.

In the present case, it is undisputed that Produce Alliance sold perishable produce through interstate commerce to Green Apple who was a dealer and that Produce Alliance has not received full payment. It is also undisputed that Produce Alliance complied with PACA's requirement that it timely file a notice of its intent to preserve the trust benefits. Since Green Apple is now out of

business, Produce Alliance seeks compensation from certain individuals involved with Green Apple under a trust theory set forth in 7 U.S.C. § 499e(c)(2).

After analyzing the decisions of other courts around the country, the Ninth Circuit determined in Sunkist that individuals associated with corporate defendants may be liable under a PACA trust theory:

> Anyone found to be a PACA "dealer" is subject to liability under PACA section 499b, which makes unlawful unfair conduct including the failure to maintain a statutory trust.... If deemed a PACA "dealer," an individual is liable for his own acts, omissions, or failures while acting for or employed by any other dealer. 7 U.S.C. § 499e(a).
>
> Frio Ice v. SunFruit, Inc., 724 F.Supp. 1373, 1381-82 (S.D.Fla.1989) (footnote and citation omitted), rev'd on other grounds, 918 F.2d 154 (11th Cir.1990). A court considering the liability of the individual may look at "the closely-held nature of the corporation, the individual's active management role" and any evidence of the individual's acting for the corporation. Id. at 1382.
>
> An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act.... [A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier.
>
> Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F.Supp. 346, 348 (S.D.N.Y.1993). See Bronia, Inc., v. Ho, 873 F.Supp. 854, 861 (S.D.N.Y.1995) (sole shareholder, director, and president of corporation personally liable for corporation's breach of PACA trust under Morris Okun ); Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F.Supp. 209, 211 (E.D.N.Y.1993) ("an officer who causes a corporate trustee to commit a breach of trust which causes a loss to the [PACA] trust is personally liable to the beneficiaries for that loss"); In re Zois, 201 B.R. 501, 507 (Bankr.N.D.Ill.1996) ("Courts have generally imparted individual responsibility for breaches of PACA while individuals were in the employ or an officer of a corporation."); In re Snyder, 184 B.R. 473, 475 (D.Md.1995) (PACA trust imposes liability on controlling person of corporation for use of trust assets for any purpose other than repayment, quoting Okun ).
>
> The unanimous conclusion of the cases is that "PACA liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." Shepard v. K.B. Fruit & Vegetable, Inc., 868 F.Supp. 703, 706 (E.D.Pa.1994).
>
> We agree that individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act.

Sunkist, at 282-83.

The question for purposes of the cross motions for summary judgment becomes are there genuine issues of material fact related to Cannon's undisputed level of involvement with Green Apple that would prevent the Court from determining as a matter of law that Cannon was or was not in a position to control PACA assets? While the Ninth Circuit determined that individuals in a position to control trust assets could be held liable, the Court did not articulate specific factors that should be considered to determine if an individual was in a position to control trust assets.[2] Therefore, this Court reviewed the relevant case law to help define the "position to control" inquiry.

In Golman-Hayden Co. v. Fresh Source Produce, 217 F.3d 348, 349 (5th Cir. 2000), the Fifth Circuit adopted the "position to control" test set forth in Sunkist and held a sole shareholder was in a position to control the PACA trust assets when he "failed to exercise reasonable care to ensure proper management of the [produce] company." As a sole shareholder, a person has absolute control of the corporation and the failure to exercise the right and obligation to manage the corporation is a breach of fiduciary duty that resulted in the passive, but sole shareholder being individually liable under the trust provision of PACA. "We conclude that his [the sole shareholder's] refusal or failure to exercise any appreciable oversight of the corporation's management was a breach of the fiduciary duty to preserve the trust assets." Golman-Hayden at 351. The trial court in Golman-Hayden used as guidance New York's two factor test used to determine if an individual shareholder should be held liable: "(1) whether the individuals' involvement with the corporation was sufficient to establish legal responsibility, and (2) whether the individuals, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to PACA creditors." Id. at 350.

---

[2] Sunkist was primarily focused on whether a party who had brought state court contract claims was barred by the doctrines of *res judicata* or collateral estoppel from bringing PACA trust claims against individuals in federal court. The Court remanded the matter back to district court to allow the trust claims to proceed after determining officers could as a matter of law be personally liable under PACA.

ORDER- Page. 7

"An investor in a perishable commodities corporation 'should know at the beginning of his association with such corporation that he is 'buying into' a corporation which is strictly regulated by the federal government through PACA.'" Id. (citing Hawkins v. Agricultural Marketing Serv., 10 F.3d 1125, 1131 (5th Cir. 1993)).

A shareholder in a position to protect trust assets and who fails to do so is liable whether an officer's failure to act to preserve trust assets was intentional or unintentional or whether the individual was an otherwise responsible corporate officer. See Morris Okun Inc. V. Harry Zimmerman, Inc., 814 F.Supp. 346 (S.D.N.Y. 1993); Red's Market v. Cape Canaveral Cruise Line, Inc., 181 F.Supp. 2d 1339 (M.D. Fla. 2002). The fact the proceeds from the sales of the produce by Green Apple were used for legitimate business expenses such as rent, payroll or utilities does not prevent personal liability from attaching to those in a position of control over the trust assets. Id. Simply put, a PACA trust gives a PACA beneficiary to the perishable sale proceeds priority over all other expenditures and creditors. When a corporation or a controlling person of that corporation fails to use the trust assets for any purpose other than the repayment of the supplier, such parties are in breach of their fiduciary duties and are liable under PACA. Sunkist, 104 F.3d 280 (9th Cir. 1997).

Cannon was at least a 25% owner of Green Apple.[3] Cannon was the President of Green Apple and Chairman of the Board of Directors. It is undisputed that Cannon was not involved in the daily business activities of Green Apple and did not pay the bills of Green Apple. Cannon admits his role was to provide financial backing for the corporation,[4] he provided the guaranty with the bank so a letter of credit in the amount of $100,000 could be issued on behalf of Green Apple and arranged other financing for the corporation. Cannon personally guaranteed the start up and operating loans for Green Apple. Cannon maintains he was not notified that Green Apple was

---

[3]Cannon may be a 1/3 owner of Green Apple if Dittman returned his 25% interest to Green Apple on March 12, 2004.

[4]Affidavit of Colin Cannon, Docket No. 52, p. 2: "It [Green Apple] looked to me to provide financing backing for the corporation and I would have periodic meetings to determine the financial viability of the corporation."

exceeding the credit protected by the letter of credit, but the record reflects he was notified of the $100,000 draw on the letter of credit in April and took out a mortgage on his home to pay off the obligation to Wells Fargo.

It is undisputed that Cannon was not involved in the day to day produce purchases and sales. He did not decide which creditors to pay. Cannon maintains he was not aware of Produce Alliance's sales of produce to Green Apple or that Green Apple failed to pay Produce Alliance. He did, however, attend a business meeting of Green Apple in March 2004 in which financial difficulties of the company were discussed. Cannon was a signatory on the bank accounts maintained by Green Apple, was a principal listed on Green Apple's PACA license, was the registered agent for service for Green Apple, was involved in trying to sell Green Apple in the spring of 2004 and was paid $40,000 from Green Apple's bank account. Cannon was also the IRS contact concerning back taxes for Green Apple.

The Court finds based upon reviewing the undisputed facts in light most favorable to Cannon, summary judgment as to Cannon's liability under PACA is appropriate as there are no genuine issues of material fact which prevent this Court from finding Cannon, as the President and Chairman of the Board of Directors of the corporation, was sufficiently involved in the company that he was in a position to control trust assets and his failure to act is analogous to the failure to act in Golman-Hayden. In fact, the case for personal liability is stronger in the case at bar wherein Cannon arranged the letter of credit used to guaranty payment to Produce Alliance, was a significant shareholder in the company, was the Chairman of the Board of Directors, was a signatory on the bank accounts, attended financial meetings regarding the corporation, was the tax contact for back taxes, was by his own admission, responsible for the financial viability of the corporation and was a principal identified on the PACA license. Moreover, Cannon was involved in attempting to sell the business in the spring of 2004. Simply because Cannon elected not to fulfill his trustee duties or delegated such duties to others, does not mean he was not legally in a position to control the trusts assets.

The test is not whether some other officer or director was more actively involved in the day to day operations and control of the trust assets, the test is whether Cannon was in a position to control trust assets as President of a highly regulated produce business. Clearly under the terms of the corporation's own bylaws, the President and Chairman of the Board had the legal responsibility and fiduciary duty to manage the corporation. Cannon knew "at the beginning of his association with such corporation that he is 'buying into' a corporation which is strictly regulated by the federal government through PACA.'" Golman-Hayden at 351.

The remedial intent of PACA would be completely frustrated if a person serving as President and Chairman of the Board with legal responsibility over a corporation and with at least a 25% stake in a produce business heavily regulated by the trustee requirements of PACA could claim he was not in a position of control over trust assets because he was not involved in the day to day purchases and sales of produce. Cannon has a business background and is the type of officer in a corporation who is in a position to control the trust assets when he is informed of the produce corporation's financial difficulties and when he knows the corporation's day to day activities fall under the PACA trust regulations. Cannon's failure as the lead officer and director to exercise oversight of the management of trust assets creates liability under PACA. The Court finds there are no genuine issues of material fact and no reasonable juror could find Cannon was not in a position to control trust assets and summary judgment should be granted in Plaintiff's favor.

**Dittman's Motion for Summary Judgment and Produce Alliance's Cross Motion for Summary Judgment**

Dittman seeks summary judgment for any liability after the date of his resignation from employment with Green Apple and his tendering of his stock back to Green Apple. Plaintiff argues summary judgment in favor of Dittman is not proper as he continued to be involved in the operations of Green Apple after March 12, 2004 and his earlier breach of trustee duties subjects him to liability beyond March 12, 2004.

It is undisputed that prior to March 12, 2004, Dittman ran the day to day operations of purchasing and selling produce, was an officer and shareholder of the company, and he made decisions regarding which creditors would be paid.  As a matter of law, Dittman was in a position to control trust assets and is personally liable for breaching his fiduciary duty to pay Produce Alliance and summary judgment in favor of Produce Alliance is appropriate for any liability that remains owing due to sales of produce to Green Apple on or before March 12, 2004.  The amount of such liability as of March 12, 2004 will need to be determined in further court proceedings.

After March 12, 2004, the facts in the record clearly create a genuine issue of material fact regarding whether Dittman was in a position to control trust assets.  While Dittman maintains he effectively ended his involvement on March 12, 2004, Produce Alliance alleges Dittman remained involved in the corporation, was not replaced as a corporate officer, made telephone calls to Produce Alliance in April regarding Green Apple's financial status, remained as a signatory on certain corporate checking accounts until the summer of 2004.  Moreover, Torres and Dill allege Dittman mismanaged the business prior to his resignation and his alleged mismanagement and allegedly improper payments to certain third parties made Green Apple unable to pay its creditors after Dittman's resignation.

"[A] corporate official may be liable for dissipation of trust assets when there has been a diversion of trust assets or when the official has impaired the unpaid suppliers' ability to recover payment for the money owed."  Movsovitz & Sons of Florida, Inc. v. Axel Gonzalez, Inc., ___ F. Supp. 2d ___, 2005 WL 928596 (D. Puerto Rico 2005) (citing Am. Banana Co. 362 F.3d 33, 41 (2nd. Cir. 2004).  The Court agrees with Produce Alliance that a trustee cannot avoid liability for breaches of trust committed prior to his resignation.  Restatement of Trusts, Second, Section 106, Comment.

As to the alleged liability after March 12, 2004, the Court finds there exist genuine issues of material fact regarding the scope of Dittman's involvement in Green Apple after March 12, 2004 and whether any of his actions prior to his resignation on March 12, 2004 caused the breach of

trustee duties by Green Apple after March 12, 2004. Accordingly, summary judgment as to Dittman's liability after March 12, 2004 is denied.

### Produce Alliance's Motion for Summary Judgment Against Torres and Dill

Produce Alliance seeks summary judgment against Torres and Dill under the "position to control" test for shareholders and officers in a position to protect trust assets. Torres and Dill claim they are owed an offset in the amount owed to Produce Alliance which is a rebate under the terms of the sales of produce and that the problems of not paying Produce Alliance were due to Dittman's mismanagement of the corporation and the manner in which Produce Alliance sought payment of the amount owed contributed to the failure of the corporation.

As to the allegations that Dittman mismanaged the corporation, this issue is not before the Court on the motion for summary judgment filed by Produce Alliance. Torres' and Dill's cross claim against Dittman and Cannon survive this motion. As to the claim for an offset in the amount owed based on a "rebate" theory, such is rejected. The terms of the Member House Agreement Paragraph 5(d) indicate that a rebate is only appropriate where prompt payment is made by the purchaser of the produce. It is undisputed in this case that Green Apple did not make prompt payment of the amounts owed to Produce Alliance and the rebate clause would not apply as Green Apple failed to meet the three conditions precedent for a rebate set forth in Paragraph 5(d). Finally, as to Torres' and Dill's argument that the manner of collection by Produce Alliance caused Green Apple's downfall is irrelevant. Produce Alliance used proper legal channels to secure a temporary restraining order and preliminary injunction and Green Apple failed to respond to such motions before the Court. It is too late now to claim the collection efforts by Produce Alliance were harmful.

It is undisputed Torres and Dill were officers and shareholders of the corporation and took over the day to day operations of Green Apple after Dittman offered his resignation on March 12, 2004. Additionally, they both were signatories on the corporation's bank accounts at Idaho Independent Bank and Wells Fargo. It is undisputed that after March 12, 2004, Torres and Dill

decided which creditors of Green Apple would be paid and how much they would pay to each creditor. Clearly, both Torres and Dill were in a position to control trust assets and by failing to pay Produce Alliance, breached their trustee duties and can be held personally liable under PACA. As stated earlier, it does not matter if the trust monies were used to pay legitimate business expenses of Green Apple. Produce Alliance had a priority interest in the trust proceeds from the sale of the produce they sold to Green Apple. As a matter of law, there are no genuine issues of material fact and summary judgment is appropriate in favor of Produce Alliance against these two officers and shareholders.

## Conclusion

Green Apple has failed to respond to the complaint or appear. Green Apple is in default and default judgment shall be entered against Green Apple. Individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA. As a matter of law, the Court finds Cannon, Dill and Torres are personally liable under PACA for the remaining balance and costs owed to Plaintiff. The Court also finds as a matter of law, Dittman is personally liable under PACA for liability owing as of Mach 12, 2004 that has not been paid. Summary judgment as to Dittman's liability after March 12, 2004 is not granted and this matter must proceed to trial.

As to the issue of Plaintiff's request for attorneys' fees and collection costs, the Court finds such are properly available under PACA as part of the loss amount. In Middle Mt. Land & Produce Inc. v. Sound Commodities, Inc., 307 F.3d 1220 (9th Cir. 2002), the court held the calculation of loss based on PACA § 499e(c)(2) ("full payment of the sums owing in connection with perishable agricultural commodities transactions") encompasses not only price of perishable agricultural commodities but also related expenses including contractual rights to attorneys fees and interest. See also Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 632 (11th Cir. 2004)(adopting

Ninth Circuit analysis in <u>Middle Mt. Land</u>). In this case, the invoices submitted by Produce Alliance set forth the provisions of PACA and the terms for past due accounts and collection costs, including attorneys fees.  The amount of the award of attorneys fees and collections costs shall be determined after Plaintiff's submits its fees and costs and the Defendants have had the opportunity to challenge the reasonableness of such fees and costs.

## Order

Being fully advised in the premises, the Court hereby orders:

1. Cannon's Motion for Summary Judgment (Docket No. 49) is DENIED.

2. Dittman's Motion for Summary Judgment (Docket No. 57) is DENIED.

3. Produce Alliance's Motion for Summary Judgment against Cannon (Docket No. 81) is GRANTED.

4. Produce Alliance's Motion for Summary Judgment against Dittman (Docket No. 93) is GRANTED IN PART AND DENIED IN PART consistent with this Order.

5. Produce Alliance's Motion for Summary Judgment against Torres and Dill (Docket No. 96) is GRANTED.

6. The trial remains set for Tuesday, July 5, 2005 on the remaining claim against Dill and the cross claims filed by the Defendants.

7. Plaintiff to submit a proposed default judgment against Green Apple.

DATED:  **May 16, 2005**

Honorable Edward J. Lodge
U. S. District Judge

ORDER- Page. 14